IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RICHARD MCBRIDE                                                    PLAINTIFF

v.                                              CAUSE NO. 1:13CV27-HSO-RHW

KEITH DAVIS, *Moss Point Police Chief*, et al.              DEFENDANTS

## MEMORANDUM OPINION AND ORDER (1) DENYING MOTIONS FOR DISCOVERY FILED BY PLAINTIFF, (2) GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS, AND (3) DENYING MOTIONS FOR SUMMARY JUDGMENT FILED BY PLAINTIFF

BEFORE THE COURT are the following Motions: [53, 54, 55, 56] Motions for Discovery filed by Plaintiff Richard McBride ("Plaintiff" or "McBride"); [58] Motion for Summary Judgment on Qualified Immunity and Judicial Immunity filed by Defendants the City of Moss Point, Mississippi; Moss Point Police Chief Keith Davis ("Chief Davis"); Moss Point Police Detective Johnny Jefferson ("Detective Jefferson"); and Moss Point Municipal Court Judge Maxine Conway ("Judge Conway") (collectively, "Defendants"); and [60, 62] Motions for Summary Judgment filed by Plaintiff McBride.  Having reviewed the submissions of the parties and relevant law, the Court is of the opinion that Plaintiff's Motions for Discovery and Motions for Summary Judgment should be denied.  Defendants' Motion for Summary Judgment should be granted in part and denied in part.

Defendants Chief Davis and Detective Jefferson are entitled to qualified immunity in their individual capacities from Plaintiff's claims of First Amendment retaliation, excessive bail under the Eighth Amendment, and violation of equal protection under the Fourteenth Amendment.  The Court also concludes that Chief

Davis and Detective Jefferson have qualified immunity from any claim of unlawful seizure under the Fourth Amendment, except with respect to Plaintiff's claim of being detained for several hours while Plaintiff was in the process of being released on bond because questions of fact remain on this claim. Additionally, Plaintiff's official capacity claims against Chief Davis and Detective Jefferson are redundant of the claims against the City of Moss Point and will be dismissed.

The Court is further of the opinion that Defendant Judge Conway is entitled to judicial immunity from the claims stated against her in her individual capacity and from any claim for damages in her official capacity. The Court is without authority to award any injunctive or declaratory relief to Plaintiff and against Judge Conway, and summary judgment will be granted in favor of Judge Conway on those claims, as well. The Motion for Summary Judgment filed by Defendants will be denied in all other respects.

## I.   BACKGROUND

Plaintiff Richard McBride, proceeding *pro se*, instituted this action by filing a Complaint on January 17, 2013, in the Circuit Court of Jackson County, Mississippi, which was subsequently removed to this Court. McBride sued the City of Moss Point, Mississippi, several current and former law enforcement officers for the City of Moss Point, and a former Moss Point city judge. Pursuant to previous Orders of this Court, the only remaining Defendants are the City of Moss Point, Chief Davis in his official and individual capacities, Detective Jefferson in his official and individual capacities, and Judge Conway in her official and individual capacities.

The Court has thoroughly reviewed Defendants' evidence as well as the more than 100 pages of exhibits submitted by Plaintiff McBride. Many of McBride's exhibits – such as evidence related to his status as a minister – are irrelevant to the actual issues before the Court on summary judgment. Furthermore, some of the evidence relates to persons who are no longer defendants, or to allegations and claims that have been dismissed, and, thus, will be disregarded. Accordingly, in the light most favorable to McBride, the relevant facts for summary judgment purposes are as follows:

On January 15, 2012, McBride was arrested and incarcerated for alleged aggravated domestic violence against his wife, Blondine McBride ("Blondine"), and for a purported attempt to intimidate Blondine from testifying as a witness against McBride. McBride was released on bond the following day. A grand jury indicted McBride, but the charges were ultimately dismissed by the State because Blondine would not testify.

There is no evidence or allegation that Detective Jefferson or Chief Davis was involved in the initial arrest, which was apparently prompted by a telephone call from personnel at Singing River Hospital after Blondine arrived there and informed the Hospital she had been a victim of domestic abuse. McBride admits that on or around January 15, 2012, Blondine "went to Singing River Hospital to check on her back. She fell up against the weigh bench. The weight bench has cords. My wife believe or thought I Richard McBride had hit her." (*Id.* at 12) (all *sic* in original); (*see also* McBride Aff. 7 (¶22), ECF No. 60).

Blondine was treated and released. When Blondine returned home, she was met

by Detective Jefferson.  The Investigative Report completed by Detective Jefferson states that he "traveled to speak with Mrs. Blondine McBride regarding the incident." (ECF No. 58-3, at p.3).  The Report further states that Blondine "was under the influence of pain medication[;] therefore, Detective Jefferson couldn't interview her[,]" but was "able to photograph the injuries which she sustained to her body."  (*Id.*).

McBride accuses Detective Jefferson of making false statements about McBride to Blondine and intimidating her in such a way that she left the McBride home to stay at a women's shelter.  McBride also claims that Detective Jefferson's "failure to conduct due diligence to be a form of negligence[,]" (Compl. 11-12, ECF No. 1-2), and that the Criminal Affidavits signed by Detective Jefferson for charging McBride with aggravated assault and witness intimidation were fabricated, (McBride Aff. 12-13 (¶¶ 42, 46), ECF No. 60).  In support of his claims, McBride has submitted the Affidavit of Blondine McBride, in which she states that she did not ask Detective Jefferson or any other police officer to file charges against her husband.  (Blondine Aff. 1 (¶4), ECF No. 60).

McBride also contends that on January 16, 2012, he was in the process of being released on bond when two detectives, including Detective Jefferson, stopped him and held him on orders from Chief Davis, who purportedly wanted to talk to McBride. McBride alleges that he was handcuffed to the wall for five or six hours and then moved to another room where he was chained to a table until Chief Davis arrived.  He asserts that when Chief Davis arrived, he falsely accused McBride of "pull[ing] a gun on him in his office."  (Compl. 7-9, ECF No. 1-2).  He claims that Chief Davis "drew his

4

gun twice" on McBride, intimidating him with deadly force.[1]  (*Id.*).

According to McBride, Chief Davis talked to Detective Jefferson and another detective, as well as to Judge Conway, and together these Defendants conspired to falsely accuse McBride of having "multiple counts of domestic violence." (*Id.*).  McBride maintains that this allegedly false accusation resulted in Judge Conway setting his bail at $85,000.00, which McBride contends was excessive in violation of his Eighth Amendment rights.  McBride also asserts that Detective Jefferson and another detective made false statements against him at the bail hearing, and Judge Conway "improperly discuss[ed his] case in open court." (*Id.* at 10).  McBride claims that Chief Davis, Detective Jefferson, and Judge Conway conspired to defame him, extort him through excessive bail, violate his right to equal protection, and retaliate against him because he had filed criminal charges against police officers to "protest police injustice." (*See, e.g.*, *id.* at 2, 9).

The remaining allegations in McBride's Complaint do not relate to his January 15, 2012, arrest and have no bearing on the claims still before the Court in this action.

---

[1] Defendants argue that McBride has admitted Chief Davis never pulled a weapon on him.  The Court has reviewed McBride's testimony submitted by Defendants and disagrees.  McBride testified: "We had a discussion, and he [Chief Davis] accused me of coming down with a gun.  I told him I had a permit, and then I said, well, I can show you my permit, and then he drew for his gun on me." (Transcript 3, ECF No. 58-5).  The Court therefore denies Defendants' request "that costs and attorneys' fees be assessed to the Plaintiff for filing a Complaint containing false information regarding his encounter with Chief Davis . . . ." (Defs.' Mot. 11, ECF No. 58).  The Court also notes that while Defendants have submitted the Affidavit of Detective Jefferson in which he testifies that Chief Davis never drew his weapon, the Court must resolve factual disputes in McBride's favor for summary judgment purposes.

## II.   <u>STANDARD OF REVIEW</u>

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the movant carries this burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25.

To overcome summary judgment, a party may not rest upon mere allegations in his complaint but must set forth specific facts showing the existence of a genuine issue for trial. *Abarca*, 404 F.3d at 940. This requires the party "to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his . . . claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support [a party's] opposition to summary judgment." *Id.* Moreover, a party's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d

6

1069, 1075 (5th Cir. 1994) (citations and quotation marks omitted).  The Court will not, in the absence of proof, assume that a party could or would prove the necessary facts.  *Id.*  Finally, while "the pleadings filed by pro se parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' pro se parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment."  *Ogbodiegwu v. Wackenut Corr. Corp.*, 202 F.3d 265, *2 (5th Cir. 1999) (citation omitted).

## III.   DISCUSSION

### A.   Plaintiff's Requests for Discovery

McBride does not contest that at the status conference held in this case on May 14, 2014, the parties represented to Magistrate Judge Robert H. Walker that no discovery was needed prior to the deadline set by Judge Walker for the filing of qualified immunity and judicial immunity motions.  However, one month later McBride filed four Motions requesting discovery from Defendants.  Based on McBride's representations to the Magistrate Judge, the Court finds that the Motions should be denied at this time.

The Court is also of the opinion that the vast majority – if not all – of the discovery requested by McBride does not relate to the immunity issues currently before the Court.  Because McBride has not argued that he needs any discovery to oppose the pending Motion for Summary Judgment filed by Defendants or otherwise shown how the requested discovery would aid him in doing so, the Court will deny the Motions on this additional ground.

7

B.   <u>Defendants' Motion for Summary Judgment</u>

Pursuant to this Court's Order dated January 22, 2014, the following claims remain against Defendants: Plaintiff's claims made pursuant to 42 U.S.C. § 1983 for First Amendment retaliation, unlawful seizure under the Fourth Amendment, excessive bail under the Eighth Amendment, and Fourteenth Amendment equal protection violation; and Plaintiff's state law claims for false imprisonment, defamation, emotional distress, civil conspiracy, and negligence (against Detective Jefferson only). (*See* Order 17, ECF No. 23). Although Defendants request a full dismissal, the only issues properly before the Court at this stage of the proceedings are whether Defendants Chief Davis and Detective Jefferson are entitled to qualified immunity in their individual capacities from Plaintiff's federal constitutional claims, and whether Defendant Judge Conway is entitled to judicial immunity from all claims asserted against her.

The Court also finds that McBride's official capacity claims against Chief Davis and Detective Jefferson should be dismissed since, under Fifth Circuit precedent, a lawsuit against a government official in his official capacity is treated as a suit "against the government entity . . . ." *Lewis v. Pugh*, 289 F. App'x 767, 772 (5th Cir. 2008) (citing *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000)). Therefore, McBride's claims against Chief Davis and Detective Jefferson in their official capacities "merge with h[is] claims against the City." *See id.*; *Pride v. City of Biloxi*, 2011 WL 5835109, at *5 (S.D. Miss. Nov. 21, 2011) ("Given that the City is a named defendant, the official capacity claims

8

against individual officials are redundant of the suit against the City. Federal courts have held that in such a case, official capacity claims against individual officials may be dismissed as duplicative or redundant of the municipal entity claims.").

The doctrine of qualified immunity does not apply to the City of Moss Point. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993); *de la O v. Hous. Auth. of City of El Paso*, 417 F.3d 495, 499 (5th Cir. 2005) ("The doctrine of qualified immunity, furthermore, is applicable only to government officials, not municipal entities."). "[A] municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman*, 507 U.S. at 166; *Pride*, 2011 WL 5835109, at *6. Since the issue of the City's liability is not before the Court at this juncture of the proceedings, the claims against the City will proceed, even though the Court finds that Chief Davis and Detective Jefferson are entitled to qualified immunity from most of the federal claims stated against them. *See Owens v. City of Independence*, 445 U.S. 622, 638 (1980) ("We hold, therefore, that the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983.").

Similarly, qualified immunity does not apply to McBride's claims made against Chief Davis and Detective Jefferson under state law. *See Kermode v. Univ. of Miss. Med. Ctr.*, No. 3:09-cv-584-DPJ-FKB, 2010 WL 2683095, at *5 (S.D. Miss. July 2, 2010). While the Court does not prejudge the merits of McBride's state law

9

claims or their likelihood of success, it is inappropriate to grant summary judgment on those claims at this juncture, when the Court is only deciding issues of qualified and judicial immunity.[2]  The state law claims of false imprisonment, defamation, emotional distress, and civil conspiracy against Defendants City of Moss Point, Chief Davis, and Detective Jefferson, and the state law negligence claim against Detective Jefferson, will therefore proceed.

1.  <u>Plaintiff's Claims Against Defendants Chief Davis and Detective Jefferson</u>

Qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios,* 381 F.3d 391, 393 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  A government official is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002).  When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate that the defense does not apply. *Id.*  Thus, "[o]n a motion for summary judgment, a plaintiff must produce evidence showing two things: (1) that the defendants violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable." *Zarnow v. City of Wichita*

---

[2] Defendants argue that Chief Davis cannot be liable for defamation because any statement he made about McBride was true.  For the reasons stated above, this argument is premature at this time.

*Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

"The inquiry into reasonableness asks whether the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citation, quotation marks, and brackets omitted). "If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity." *Id.* at 407-08. If an official's conduct was objectively reasonable, it does not matter if that official's conduct violated a constitutional right; he is still entitled to qualified immunity. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996).

Defendants claim that Plaintiff has failed to produce evidence that they violated his constitutional rights, and that all actions taken by Chief Davis and Detective Jefferson were objectively reasonable in any event. The Court will address each of Plaintiff's remaining federal claims in turn.

   a.   *First Amendment Retaliation Claim*

McBride alleges that Chief Davis and Detective Jefferson retaliated against him because he had filed criminal charges against police officers to "protest police injustice." The Court assumes for purposes of this Motion that the filing of criminal charges qualifies as protected activity under the First Amendment. The only evidence McBride has submitted of any criminal charges filed against police officers are of charges McBride filed *after* the actions of which he complains. Thus, those charges cannot form the basis of a First Amendment retaliation claim, since Chief Davis and Detective Jefferson could not have known about the charges at the time

11

of the challenged actions. *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) ("If there is no evidence that the [defendant] knew of the protected activity, [the plaintiff] cannot show that the activity motivated retaliatory behavior."). Because McBride has not met his burden of producing evidence of a First Amendment violation by Chief Davis and Detective Jefferson, summary judgment will be granted in their favor on McBride's First Amendment claim against them in their individual capacities. *See Zarnow*, 500 F.3d at 407; *Mitchell v. L.A. Law Enforcement Agency*, No. 01-877, 2007 WL 2900239, at *6-8 (E.D. La. Oct. 1, 2007) (granting summary judgment on qualified immunity grounds in favor of defendant where plaintiff failed to produce any evidence of a constitutional violation).

  b. *Unlawful Seizure Under the Fourth Amendment*

  There is no evidence or even an allegation that McBride was arrested by Chief Davis or Detective Jefferson, and they cannot be liable for an unlawful seizure on a respondeat superior theory. *See Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Detective Jefferson's signing of Criminal Affidavits does not amount to an unlawful Fourth Amendment seizure, and McBride has cited to no law to the contrary. *See Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003). Even accepting as true for purposes of this Motion only that Detective Jefferson was negligent in his actions toward Blondine and in the resulting execution of Criminal Affidavits, Detective Jefferson is still entitled to summary judgment on this claim because negligent conduct "will not

support the denial of qualified immunity." *See Zarnow*, 500 F.3d at 410-11.

To the extent McBride's unlawful seizure claim is based on McBride's contention that Chief Davis pulled a gun on him, even if this were sufficient to state a Fourth Amendment claim, the Court finds that Chief Davis is entitled to qualified immunity.  McBride has failed to rebut the evidence submitted by Defendants that McBride was reaching for *something* in his pocket, even if it was a gun permit as McBride contends, when Chief Davis allegedly pulled his gun.  The Court cannot say that it was objectively unreasonable for Chief Davis to draw his weapon when McBride, a prisoner, reached for his pocket.  Under the circumstances, Chief Davis did not act unreasonably in suspecting that McBride might be reaching for a weapon and responding by drawing his own weapon.  *See, e.g.*, *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991).  Since McBride has not offered any additional evidence to support his unlawful seizure claim against Chief Davis related to his allegation that Chief Davis pulled his gun, the Court finds that Chief Davis is entitled to qualified immunity on that claim.  *See Zarnow*, 500 F.3d at 407.

The Court reaches a different conclusion with respect to McBride's allegation that he was unreasonably detained while waiting for Chief Davis to arrive. Defendants submit the Affidavit of Detective Jefferson, in which he testifies that McBride was held for approximately 20 minutes, not for the several hours that McBride claims.  However, this evidence reveals the existence of a genuine issue of material fact regarding how long McBride was detained while waiting for Chief Davis after McBride had allegedly either been released on bond, or was in the

process of being so released.  *See Scott v. Harris*, 550 U.S. 372, 381 (2007) ("'A

Fourth Amendment seizure occurs when there is a governmental termination of

freedom of movement through means intentionally applied.'") (citation, brackets,

and ellipses omitted).  There is no further requirement of physical injury for an

unlawful seizure, as Defendants argue.  *See, e.g.*, *Hutchinson v. Brookshire Bros.*,

284 F. Supp. 2d 459, 469 (E.D. Tex. 2003) ("In order to state a claim under § 1983

for unreasonable seizure, Plaintiff must demonstrate that (1) he was seized withing

the meaning of the Fourth Amendment and (2) that such seizure was

unreasonable.") (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989);

*Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985)).

Viewing the evidence in the light most favorable to McBride, the Court

cannot yet conclude based on the present record that it was objectively reasonable

to detain McBride for several hours after he was supposedly released on bond.

Therefore, Chief Davis and Detective Jefferson are not entitled to qualified

immunity on McBride's Fourth Amendment claim based on his allegation of being

unreasonably detained, and that claim will proceed at this time.

    c.    *Excessive Bail Under the Eighth Amendment*

McBride alleges that Chief Davis conspired with Detective Jefferson and

Judge Conway to falsely accuse him of having "multiple counts of domestic

violence," and that this accusation resulted in Judge Conway setting an excessive

bail of $85,000.00.  Defendants claim that the statement related to "multiple counts

of domestic violence" was true, and have submitted evidence of McBride's arrest

history confirming the same.

In response, McBride has presented Blondine's testimony that she and "McBride never had a Domestic Violence Charge or call before July 4," 2012, and that the criminal history was "not true."  (Blondine McBride Aff. 2 (¶6), ECF No. 60).  Blondine's testimony is insufficient to create a genuine issue of material fact regarding whether the actions of Chief Davis and Detective Jefferson in relying on McBride's criminal history to determine that McBride had multiple counts of domestic violence were objectively unreasonable.  Even accepting as true Blondine's testimony that McBride's arrest history was incorrect, there is no evidence that Chief Davis and Detective Jefferson were aware that the history was inaccurate.  Therefore, it was not objectively unreasonable for Chief Davis and Detective Jefferson to rely on McBride's prior criminal history in informing Judge Conway that McBride had multiple counts of domestic violence.  Accordingly, the Court finds that Chief Davis and Detective Jefferson are entitled to qualified immunity on McBride's Eighth Amendment claim to the extent that claim is based on allegations that Defendants falsely accused McBride of having multiple counts of domestic violence.

McBride also claims that Detective Jefferson made false statements against him at the bail hearing.  In response to summary judgment, McBride does not identify what statements were allegedly made or how they were false.  *See Little*, 37 F.3d at 1075.  As discussed previously, to the extent any contested statement relates to McBride's criminal history, Detective Jefferson is entitled to qualified

15

immunity.  Furthermore, McBride's allegation that Detective Jefferson was negligent in not conducting "due diligence" when he went to interview Blondine is insufficient to overcome qualified immunity.  *See Zarnow*, 500 F.3d at 410-11.

### d.    *Violation of Equal Protection Under the Fourteenth Amendment*

"To maintain his equal protection claim, [McBride] must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001); *McAlister v. Livingston*, 348 F. App'x 923, 937-38 (5th Cir. 2009).  In response to Defendant's Motion, McBride does not address the elements of his equal protection claim or otherwise direct the Court to any evidence that his equal protection rights were violated.  *See Ragas*, 136 F.3d at 458.

The only evidence McBride submits that is even remotely related to an equal protection claim is his assertion that Chief Davis told him that he would "lock your black ass up and your wife want [*sic*] even have to testify[.]"  (McBride Aff. 11 (¶37), ECF No. 60).  This single statement alone is insufficient to create a genuine issue of material fact with respect to whether McBride was denied equal protection of the law in contrast to similarly situated individuals.  *See Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999).  Chief Davis and Detective Jefferson are entitled to qualified immunity on this claim.  *See Zarnow*, 500 F.3d at 407; *Mitchell*, 2007 WL 2900239, at *6-8.

16

2.    <u>Plaintiff's Claims Against Defendant Judge Conway</u>

Unlike qualified immunity, judicial immunity applies to McBride's claims against Judge Conway under both federal and state law.  *See Loyacono v. Ellis*, 571 So. 2d 237, 238 (Miss. 1990).  "[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Therefore, "immunity applies even when the judge is accused of acting maliciously and corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005).  "'It is the Judge's actions alone, not intent, that [the Court] must consider.'" *Ballard*, 413 F.3d at 515 (citation omitted).  Thus, "immunity is overcome only in two sets of circumstances.  First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11.  "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

In *Ballard*, the Fifth Circuit developed a four factor test to apply when evaluating whether a judge acted within the scope of his judicial capacity:

(1) whether the precise act complained of is a normal judicial function;

(2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;

(3) whether the controversy centered around a case pending before the court; and

(4) whether the acts arose directly out of a visit to the judge in his

official capacity.

413 F.3d at 515.  Furthermore, *Ballard* recognized that "'[w]here a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Id.* at 517 (citation omitted).  If the judge "merely acted in excess of her authority, she is still protected by judicial immunity."  *Id.* (citation, quotation marks, and brackets omitted).

Applying the four factors set forth in *Ballard* to this case, the Court finds that Judge Conway is entitled to judicial immunity from all claims asserted against her.  McBride's statement that Judge Conway "acted outside of her role as a Judge at all time[,]" (McBride Aff. 16 (¶68), ECF No. 60), is conclusory and insufficient to overcome judicial immunity.  *See Little*, 37 F.3d at 1075.  McBride has also submitted with his summary judgment opposition a complaint that he filed with the Mississippi Commission on Judicial Performance against Judge Conway, making much the same allegations he has advanced in this action.  However, the fact that McBride has filed a complaint – with no evidence that the Commission has acted on it – does not persuade this Court that immunity should be denied, and, indeed, is irrelevant to the immunity analysis.

The challenged actions of Judge Conway, including the setting of bail, were clearly part of a normal judicial function which arose in the course of Judge Conway's official duties as a judge.  *See, e.g., Pittman v. Cooksey*, 2009 WL 112165, at *2 (S.D. Miss. Jan. 15, 2009).  There is no indication that Judge Conway's actions occurred outside the courtroom, her chambers/office, or other appropriate spaces.

*See, e.g.*, *id.*  McBride's allegations of a conspiracy do not change this result.  *See Holloway v. Walker*, 765 F.2d 517, 522-25 (5th Cir. 1985); *Modelist v. Miller*, 445 F. App'x 737, 740 (5th Cir. 2011).  Finally, there is no allegation, evidence, or even argument before the Court that Judge Conway did not have subject matter jurisdiction over the matter at the time of the challenged actions.  *See Ballard*, 413 F.3d at 517.

Based on the foregoing, the record supports the conclusion that Judge Conway is entitled to judicial immunity from all claims asserted against her in her individual capacity.  *See Mireles*, 502 U.S. at 11.  The Court is also of the opinion that Judge Conway is immune from any claim for damages in her official capacity.  *See Holloway*, 765 F.2d at 522-25.  In addition, "[a]lthough judicial immunity does not bar claims for injunctive or declaratory relief in civil rights actions, [McBride] cannot obtain [any] requested [declaratory or injunctive] relief because federal courts have no authority to direct state courts or their judicial officers in the performance of their duties."  *See LaBranche v. Becnel*, 559 F. App'x 290, 291 (5th Cir. 2014).  McBride's claims against Judge Conway should be dismissed in their entirety, and Judge Conway will be dismissed as a Defendant in this action.

C.   <u>Plaintiff's Motions for Summary Judgment</u>

McBride purports to move for summary judgment in his favor on his claims. In doing so, he appears to confuse a plaintiff's burden of stating a claim under Rule 12 with a movant's burden of establishing that there are no genuine issues of material fact for trial under Rule 56.  (*See* Pl.'s Mot. 1-2, ECF No 62).  These

burdens are not the same.  Simply because the Court previously found that McBride had stated plausible claims for purposes of analyzing dismissal under Federal Rule of Civil Procedure 12 does not mean that McBride is entitled to summary judgment in his favor and against Defendants on those claims under Federal Rule of Civil Procedure 56.

McBride cites to no record evidence and does not otherwise explain beyond mere conclusory allegations why he is entitled to summary judgment.  Indeed, his Motions are largely incomprehensible and contradictory.  Therefore, the Court is of the opinion that McBride's Motions for Summary Judgment should be denied because he has not carried his initial summary judgment burden.  *See Celotex*, 477 U.S. at 323-25.

Finally, in his Reply Brief (ECF No. 68), McBride requests sanctions under Federal Rule of Civil Procedure 11 against Defendants and their counsel.  The Court will deny this request because McBride did not comply with Rule 11(c).  Furthermore, the Court is of the opinion that sanctions against Defendants and their counsel are not warranted under the circumstances.

## IV.   CONCLUSION

For the reasons discussed herein, the Court is of the opinion that the Motions for Discovery and Motions for Summary Judgment filed by Plaintiff Richard McBride should be denied.  The Court is also of the opinion that the Motion for Summary Judgment filed by Defendants should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [53, 54, 55, 56] Motions for Discovery and [60, 62] Motions for Summary Judgment filed by Plaintiff Richard McBride are **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the [58] Motion for Summary Judgment on Qualified Immunity and Judicial Immunity filed by Defendants is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claims against Defendant Judge Conway are **DISMISSED WITH PREJUDICE** and she is terminated as a Defendant.  Plaintiff's claims against Defendants Chief Davis and Detective Jefferson in their official capacities are also **DISMISSED WITH PREJUDICE** and those Defendants are terminated as Defendants in their official capacities only.  Plaintiff's federal claims against Defendants Chief Davis and Detective Jefferson in their individual capacities, with the exception of Plaintiff's claim of unlawful seizure under the Fourth Amendment as discussed herein, are also **DISMISSED WITH PREJUDICE**.

Plaintiff's claim of unlawful seizure under the Fourth Amendment against Chief Davis and Detective Jefferson in their individual capacities, and Plaintiff's federal claims against the City of Moss Point for First Amendment retaliation, unlawful seizure under the Fourth Amendment, excessive bail under the Eighth Amendment, and violation of equal protection under the Fourteenth Amendment, will proceed at this juncture.  Plaintiff's state law claims against the City of Moss Point, Chief Davis, and Detective Jefferson for false imprisonment, defamation, emotional distress, and civil conspiracy, and Plaintiff's state law claim against

21

Detective Jefferson for negligence, will also proceed.

       **SO ORDERED AND ADJUDGED,** this the 28th day of January, 2015.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE
